FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 03 2019

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| **Nikki Murdock and Les McGee,** individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Air Medical Group Holdings, Inc. d/b/a AirMedCare Network; and Global Medical Response, Inc.,<br><br>Defendants. | Case no. 4:19-cv-5-BRW<br><br>Jury Trial Demanded<br><br>This case assigned to District Judge __Wilson__<br>and to Magistrate Judge __Volpe__ |

**Complaint—Class Action**

Plaintiffs allege:

### JURISDICTION & VENUE

1.  This Court has subject-matter jurisdiction over this action because it is a civil class action, the aggregate amount in controversy exceeds $5 million exclusive of interest and costs, and diversity of citizenship exists between Plaintiffs and Defendants. 28 U.S.C. § 1332(d)(2)(A).

2.  Venue is proper in this district because the events giving rise to the claims occurred here. 28 U.S.C. § 1391(b)(2).

### PARTIES

3.  Plaintiff Nikki Murdock is over the age of eighteen and is a citizen of Arkansas, residing at 2074 Cadron Creek Road, Quitman, Arkansas 72132. Plaintiff Murdock is employed

1

COMPLAINT—CLASS ACTION

by Defendant as a membership sales manager. She began her employment November 13, 2009.

4. Plaintiff Les McGee is over the age of eighteen and is a citizen of Oklahoma, residing at 2020 E. 56th Street, Stillwater, Oklahoma 74074. Plaintiff McGee is employed by Defendant as a membership sales manager. He began his employment August 15, 2014.

5. Defendant Air Medical Group Holdings, Inc. d/b/a AirMedCare Network ("AMGH") is a corporation with its headquarters located in Dallas, Texas. AMGH is the largest independent provider of emergency air medical services in the world. AMGH operates through its six subsidiaries: Air Evac Lifeteam, Guardian Flight, Med-Trans Corporation, REACH, AirMed International and Lifeguard. Air Medical Group Holdings, Inc. operates as a subsidiary of Global Medical Response, Inc.

6. Global Medical Response, Inc. is a corporation with its headquarters located in Greenwood Village, Colorado. Global Medical Response, Inc. is a medical transportation company formed by combining Air Medical Group Holdings, Inc. and American Medical Response, Inc.

7. Upon information and belief, Global Medical Response, Inc. is the alter-ego of AMGH. At all times herein mentioned, Global Medical Response, Inc. dominated, influenced, and controlled AMGH. A unity of interest and ownership exists between Defendants, and the individuality and separateness of each Defendant has ceased. Adherence to the fiction of separate existence of each Defendant would be unjust; thus, substance of Defendants' relationship should be recognized over form.

## FACTS COMMON TO ALL CLAIMS

8. This action arises from Defendants' failure to abide by the contractual compensation provisions by improperly withholding rightful compensation from Plaintiffs and others similarly situated.

9. Defendants sell memberships to their AirMedCare Network to citizens across the United States. Members of Defendants' network are entitled to transport by an AirMedCare Network provider for medical conditions deemed to be life-or-limb threatening or that could lead to permanent disability, and members will receive no out of pocket expenses for their flights.

10. Defendants' website states that is has over three million members.[1]

11. Defendants employ numerous Membership Sales Managers ("MSM") to sell these memberships. Each MSM has an assigned territory consisting of a specifically assigned geographic area by county. For example, Plaintiff Murdock's assigned territory consists of the counties of Cleburne, Conway, Faulkner, Grant, Jefferson, Lonoke, Perry, Pulaski, Saline, Van Buren, and White, all located in the State of Arkansas. Plaintiff McGee's assigned territory prior to January 1, 2018, consisted of the counties of Blaine, Canadian, Kingfisher, Oklahoma, Garfield, Grant, and Logan, all located in the State of Oklahoma. As of January 1, 2018, Plaintiff McGee's assigned territory consists of the counties of Creek, Lincoln, Osage, Pawnee, Payne, Kay, and Noble, all located in the State of Oklahoma.

12. Defendants' 2018 Membership Sales Manager Compensation Program Agreement outlines the compensation plan for its MSMs. MSMs are paid a base salary, and then they begin earning commissions upon meeting a monthly target of $4,000 Total Revenue Dollars. After

---

[1] *See* https://www.airmedcarenetwork.com/join/; FAQ's; What is the benefit of membership to you? Last visited January 2, 2019.

meeting the monthly target, MSMs receive a percentage of the Total Revenue Dollars collected. The agreement specifically states there is no cap on the amount of commission paid.

13. The 2018 commission tier is as follows:

| Total Revenue | Commission Tier |
|---|---|
| $15,000 | 70% |
| $10,000 | 65% |
| $7,000 | 60% |
| $5,500 | 50% |
| $4,000 | 40% |
| $3,000 | 30%[2] |

14. Defendants' 2018 Membership Sales Manager Compensation Program Agreement further states:

> Each Membership Sales Manager shall have a specifically assigned geographic area by county. Memberships sold in these counties will be included in Total Revenue Dollars regardless of who sells the membership, unless track codes are used in which case, Total Revenue Dollars will be applied in accordance with the track code.

15. Plaintiff Murdock signed the 2018 Membership Sales Manager Compensation Program Agreement on January 30, 2018. Plaintiff McGee signed the 2018 Membership Sales Manager Compensation Agreement on February 6, 2018.

---

[2] This tier is only for new hires within the first six months.

COMPLAINT—CLASS ACTION

16. Prior versions of Defendants' Membership Sales Manager Compensation Program Agreement contained the same provision allowing memberships sold in the MSM's territory to be counted towards his or her total revenue dollars regardless of who sold the membership.

17. For example, Defendants' 2009, 2012, and 2014 Membership Sales Manager Compensation Program Agreements all contain the identical provision:

> Each Membership Sales Manager shall have a specifically assigned geographic area by county. Memberships sold in these counties will be included in Total Revenue Dollars regardless of who sells the membership, unless track codes are used in which case, Total Revenue Dollars will be applied in accordance with the track code.

18. Defendants' 2014 Membership Sales Manager Compensation Program Agreement also contains the exact same commission tier structure as its 2018 agreement.

19. Defendants send out direct mail letters to potential customers located within the MSMs' territories. When this process began, if someone purchased a membership through this direct mailer, the purchase was included in that MSM's Total Revenue Dollars. The direct mailers often included the MSM's name even though the MSM did not mail them.

20. Rather than adhering to their own contract and continuing this process, Defendants began a pattern and practice of failing to include all memberships within the MSM's Total Revenue Dollars.

21. In January of 2018, Defendants mailed approximately 39,979 direct mail letters to customers in Plaintiff Murdock's designated territory. In May of 2018, Defendants mailed approximately 85,542 direct mail letters to customers in Plaintiff Murdock's territory. Defendants failed to give Plaintiff Murdock any credit towards her Total Revenue Dollars for the membership purchases obtained through the direct mail letters.

22. In January of 2018, Defendant mailed approximately 36,405 direct mail letters to customers in Plaintiff McGee's designated territory. In April of 2018, Defendant mailed approximately 115,066 direct mail letters to customers in Plaintiff McGee's territory. Defendant failed to give Plaintiff McGee any credit towards his Total Revenue Dollars for the membership purchases obtained through the direct mail letters.

23. Worse, Defendants utilize the good name and reputation of their MSMs in seeking to profit from memberships and, in turn, refuse to compensate that MSM for those memberships as required. Defendants sent direct mail letters that specifically identified Plaintiffs Murdock and McGee's names and then refused to include those sales in their Total Revenue Dollars as required.

24. As a result of Defendants' actions, Plaintiffs and the Class Members have received and continue to receive improperly reduced compensation while Defendants increase their own revenues.

25. Defendants are improperly withholding payment earned by their employees, failing to abide by their own contract, and have caused and are continuing to cause significant harm to Plaintiffs and Class Members

## CLASS-ACTION ALLEGATIONS

26. Plaintiffs bring all claims individually and on behalf of the following class (the "Class"):

> All persons in the United States who were employed by, or continued to be employed by, Defendant as a Membership Sales Manager from 2013 to present.

27. Specifically excluded from the Class are:

a. Any justice, judge or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons

b. All individuals who request to be excluded from the Class.

28. The Class is likely to have hundreds of members. On information and belief, the Class consists of over 100 members at the very least.

29. This action may properly be maintained as a class action in accordance with Federal Rule of Civil Procedure 23(a) and 23(b)(3).

30. As required by Federal Rule of Civil Procedure 23(a)(1), the members of the Class are so numerous that joinder of all members is impracticable. Appropriate discovery can determine the exact number of class members and Defendants can readily and easily identify class members from their records.

31. As required by Federal Rule of Civil Procedure 23(a)(2), the Class comprises a well-defined community of interest because common questions of law and fact predominate over individual questions. For instance, all injuries sustained by any member of the Class arise out of the singular conduct of Defendants in refusing to honor the sales commission provisions of the contracts.

32. Questions of law and fact common to the Class include:

   a. Whether Defendants' contractual agreement with its MSMs require them to credit MSMs with memberships sold within his or her territory.

   b. Whether Defendants failed to properly credit membership sales to MSMs as required by their contract.

   c. Whether Defendants unlawfully withheld MSMs rightful compensation.

    d.      Whether Defendants' conduct constitutions a breach of contract with Plaintiffs and members of the Class.

    e.      Whether Defendants' practice of failing to credit MSMs with memberships sold within their territory constitutes a breach of the duty of good faith and fair dealing.

33. As required by Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the Class.

34. As required by Federal Rule of Civil Procedure 23(a)(4), Plaintiffs can fairly and adequately represent the interests of the Class. Plaintiffs have no conflicts of interest with other members of the Class. Plaintiffs have has retained counsel competent to prosecute this litigation.

35. As required by Federal Rule of Civil Procedure 23(b)(3), a class action is superior to other methods for the fair and efficient adjudication of this controversy. Defendants engaged in a course of conduct generally and equally applicable to all Class Members. Due to the similarity of injuries, common questions of law and fact predominate among the Class. Even if any group of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class-action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. Plaintiffs' counsel foresees little difficulty in the management of this case as a class action.

## COUNT ONE
## BREACH OF CONTRACT

36. Plaintiffs repeat and incorporate by reference the preceding paragraphs as if fully set forth.

37. As explained herein, Defendants entered into a written agreement with Plaintiffs and Class Members.

38. This written agreement sets forth the compensation structure for MSMs.

39. Defendants breached their obligations under the contract by failing to compensate Plaintiffs and Class Members pursuant to the terms of the contract.

40. Defendants' conduct constitutes a breach of the contracts it entered into with Plaintiffs and Class Members.

41. Defendants' conduct also constitutes a breach of the implied covenant of good faith and fair dealing.

## COUNT TWO
## CONVERSION

42. Plaintiffs repeat and incorporate by reference the preceding paragraphs as if fully set forth.

43. Defendants have intentionally exercised dominion over property of Plaintiffs and Class Members.

44. As a result, Defendants have damaged and continue to damage Plaintiffs and Class Members. Specifically, Defendants are improperly withholding compensation to which Plaintiffs and the Class Members are entitled, and as a result, Plaintiffs and Class Members are receiving reduced compensation causing significant financial hardship.

## COUNT THREE
## UNJUST ENRICHMENT

45. Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth.

46. Defendants are unjustly retaining for their own benefit funds properly belonging to Plaintiffs and Class Members. Defendants have unfairly, improperly, and unreasonably received a benefit to the detriment of Plaintiffs and Class Members.

47. Defendants' retention of these funds is inequitable.

48. Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf each class member, demand judgment as follows:

On all claims:

    a. Certification of the proposed Class in accordance with Federal Rule of Civil Procedure 23.

    b. Appoint Plaintiffs and their counsel to represent the Class.

    c. Compensatory damages.

    d. Reasonable attorneys' fees.

    e. Restitution of money acquired unjustly.

    f. An injunction preventing Defendants from improperly withholding rightful compensation.

    g. Costs, interest, and any other relief that this Court may deem just and proper.

Respectfully submitted,

*[signature]*

Paul Byrd, Ark. Bar No. 85020
Joseph Gates, Ark. Bar No. 2010239
Paul Byrd Law Firm, PLLC
415 N. McKinley St. Ste. 210
Little Rock, AR 72205
(501) 420-3050
(501) 420-3128 fax
paul@paulbyrdlawfirm.com
joseph@paulbyrdlawfirm.com

W. Dee Miles, III, ASB-1656-M75W
**(Pro Hac Vice Forthcoming)**
C. Lance Gould, Ark. Bar No. 0913-G66C
Leslie L. Pescia, ASB-0224-U14E
**(Pro Hac Vice Forthcoming)**
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.
P.O. Box 4160
Montgomery, AL 36103
(334) 269-2343
(334) 954-7555 fax
dee.miles@beasleyallen.com
lance.gould@beasleyallen.com
leslie.pescia@beasleyallen.com

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, demand a jury trial on all triable issues.

COMPLAINT—CLASS ACTION